UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY MOBARAK,

    Plaintiff,

vs.                                                    Case No. 3:08-cv-497-J-MCR

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on March 26, 2002, alleging an inability to work since June 11, 1999. (Tr. 69-71). The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 43-44, 47-48). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on May 12, 2004. (Tr. 42, 337-386). On July 3, 2004, the Honorable JoAnn L. Anderson issued a partially favorable decision finding Plaintiff was disabled

---

[1] The Parties consented to a United States Magistrate Judge exercising jurisdiction. (Doc. 11).

1

but with a later onset date of January 26, 2003. (Tr. 15-23). On August 16, 2004, Plaintiff filed a Request for Review by the Appeals Council. The Appeals Council denied Plaintiff's request for review and Plaintiff timely filed a Complaint in the U.S. District Court on October 21, 2002. (See Case No. 3:06-cv-40-J-25MMH, Doc. 1).

Upon the Commissioner's Motion for Entry of Judgment with Remand, the Court reversed and remanded the decision of the Commissioner on April 19, 2006 to allow an ALJ to:

> reassess the credibility of Plaintiff's subjective complaints, with a specific discussion of Plaintiff's allegations and the evidence supporting any decision to reject Plaintiff's specific allegation; if warranted, to reevaluate Plaintiff's maximum residual functional capacity, with a discussion of the evidence supporting the finding; and if warranted, to obtain supplemental evidence from a vocational expert to redetermine whether Plaintiff can perform other work.

(Tr. 414). The Appeals Council vacated the ALJ's July 3, 2004 decision and remanded Plaintiff's case to the ALJ. (Tr. 419-20). The ALJ conducted a second hearing on September 7, 2006. (Tr. 441-85). In a decision dated October 24, 2006, Judge Anderson again found Plaintiff was only disabled as of January 26, 2003. (Tr. 490-99). The Appeals Council found no basis to assume jurisdiction, thus making the ALJ's October 24, 2006 decision the final decision of the Commissioner. See 20 C.F.R. § 404.984 (2007). Plaintiff timely filed his Complaint in the U.S. District Court on May 15, 2008. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since June 11, 1999, due to post-traumatic

scoliosis, cervical, lumbar and thoracic spondylosis with radiculopathy, a hearing impairment, bone spurs and difficulty sleeping. (Tr. 133).

B. **Summary of Evidence Before the ALJ**

Plaintiff was fifty-three years of age when Judge Anderson issued the most recent decision on October 24, 2006. (Tr. 449). Plaintiff had a high school education and past relevant work as an inventory clerk/materials handler. (Tr. 139, 497). Plaintiff's medical history is detailed in the ALJ's decision. By way of summary, Plaintiff was injured in 1971 during a parachute exercise while he was in the military and has had back pain on and off since that time. (Tr. 166). On August 26, 1999, Plaintiff was involved in an automobile accident after which he experienced cervical and lumbar strain as well as ringing in his ears (tinnitus), popping in his jaw, neck pain and headaches. (Tr. 164).

On April 9, 1997, Plaintiff underwent an MRI of his lumbar spine. The MRI revealed multi-level degenerative disc disease, worse at L3-4 and spurring at L4-5; posterior marginal spurring and mild posterocentral bulging of the disc at L3-4 and L5-S1; stenosis of the left neural foramen at L5-S1 and scoliosis. (Tr. 171). On October 2, 1997, Plaintiff's treating orthopedic surgeon, Dr. Georges El-Bahri, wrote a letter indicating that Plaintiff should only be working in a light duty capacity. (Tr. 169). Dr. Bahri opined Plaintiff should lift no more than twenty pounds, should avoid repetitive bending, bending/lifting and stooping or squatting. Id. Dr. Bahri also stated Plaintiff should "not sit or stand for long periods of time, but should change positions frequently throughout the day." Id. Later, on July 15, 1998, Dr. Bahri wrote a second letter stating that after reviewing the job description of Plaintiff's materials handler position, he

3

believed Plaintiff was "no longer able to perform this job due to the deterioration of his spine and increased symptoms." (Tr. 167). Dr. Bahri further stated Plaintiff's condition was "not expected to improve but [to] continue to deteriorate with time." Id. On August 30, 1999, Plaintiff underwent a cervical spine MRI which noted "cervical spondylosis of long standing nature," a combination of disc desiccation and prominent vertebral body spurring primarily at C3-4, C4-5, and C6-7, and "encroachment on the exiting neural foramina on the left at C5-6 and C6-7 by disc osteophyte complex." (Tr. 165).

On October 1, 1999, Plaintiff presented to Dr. Harry M. Koslowski complaining of neck pain, headaches, and back pain. (Tr. 161-63). Dr. Koslowski performed a nerve conduction study on October 22, 1999 and found "no evidence of denervation, and motor unit potentials were normal in appearance." (Tr. 157). Plaintiff also saw Dr. Joseph Fares for the tinnitus. On December 6, 1999, Plaintiff underwent a CT scan of the mandible. (Tr. 192). No abnormality of the mandible or TMJ's were noted. Id.

On February 24, 2000, Plaintiff underwent an MRI of his brain and thoracic spine. The MRI of the brain was unremarkable and the thoracic spine MRI showed "significant focal scoliosis of the thoracic spine at the T7-8 level without any compromise of the neural structures." (Tr. 231-32). On September 11, 2000, Dr. Arastoo T. Nabizadeh wrote a letter on Plaintiff's behalf stating that due to "the severity and advanced nature of his lower back," Plaintiff should be considered permanently and totally disabled. (Tr. 229). Plaintiff saw Dr. Nabizadeh on a monthly basis in order to obtain his medications, the Duragesic Patch and Vicodin. The notations from Plaintiff's follow-up visits with Dr. Nabizadeh indicate Plaintiff's extremities were normal as were Plaintiff's mental status, motor, sensory and cerebellar examinations.

4

On June 10, 2002, Dr. Nabizadeh filled out a form indicating Plaintiff had no motor deficits which had resulted in sustained disturbances of gait, station, and/or fine or gross movement, no loss of grip strength or ability to perform fine manipulation, and no loss of strength for any affected extremity or muscle group.  (Tr. 209).  However, on July 21, 2002, Dr. Nabizadeh wrote a letter stating that "[b]ecause of the severe abnormality of the spine which is associated with cervical and lumbar radiculopathy and significant pain," Dr. Nabizadeh considered Plaintiff to be "permanently and totally disabled, unable to participate in any gainful employment."  (Tr. 208).  On October 1, 2002, Dr. Nabizadeh completed a questionnaire stating Plaintiff had significant limitation of his spine, but not his hips, knees, ankles and elbows.  (Tr. 205).  Dr. Nabizadeh also stated Plaintiff had a mild impairment of his gait, was not able to squat, but could walk on his toes and heels, and did not need an assistive device for ambulation.  Id.

On April 13, 2000, Dr. Nabizadeh completed interrogatories from the Department of Veteran Affairs.  In them, Dr. Nabizadeh noted his belief that Plaintiff's severe cervical, thoracic and lumbar spondylosis would interfere with Plaintiff's activities of daily living and work activities.  (Tr. 320-21).  Dr. Nabizadeh also opined that Plaintiff's impairments would cause such a degree of pain so as to interfere with Plaintiff's ability to work on a regular, continuous, sustained basis.  (Tr. 321).  Dr. Nabizadeh believed the frequency of Plaintiff's pain would be continuous or 5.3 to 8 hours out of 8 hours and the intensity of the pain was severe.  Id.  That same day, Dr. Nabizadeh filled out an addendum to the interrogatories for the VA.  In it, Dr. Nabizadeh rated the limitation of motion in Plaintiff's cervical, dorsal and lumbar spine as severe.  (Tr. 322-23).  Additionally, he rated Plaintiff's intervertebral disc syndrome as being pronounced and

5

Plaintiff's lumbosacral strain as severe. (Tr. 323).

In June and October 2002, two state agency physicians completed physical Residual Functional Capacity ("RFC") assessments on Plaintiff. The first was completed by Dr. Warren Morford, M.D. and revealed Plaintiff was able to: lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours, sit for six hours in an eight-hour workday, and was not limited in his ability to push and/or pull. (Tr. 195). Dr. Morford found Plaintiff able to climb, balance, stoop, kneel, crouch, and crawl occasionally. (Tr. 196). Dr. Morford believed Plaintiff was subject to no manipulative, visual or communicative limitations. (Tr. 197-98). Finally, Dr. Morford found Plaintiff should avoid concentrated exposure to hazards, such as machinery or heights. (Tr. 198).

The second RFC assessment was completed by Dr. Thomas S. Edwards, M.D. and was identical to Dr. Morford's except Dr. Edwards found Plaintiff should never climb ladders, only occasionally climb ramps/stairs, frequently balance and occasionally stoop, kneel, crouch, or crawl. (Tr. 236). Additionally, Dr. Edwards found Plaintiff should avoid concentrated exposure to extreme cold, wetness, humidity, and hazards. (Tr.238).

### C. **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b), 416.920(a)(2)(i).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through December 31, 2004.  (Tr. 492).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date, June 11, 1999.  Id.  At step two, the ALJ found Plaintiff had severe impairments: post-traumatic scoliosis and cervical, thoracic, and lumbar spondylosis.  (Tr. 493).  At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4.  Id.

The ALJ further determined Plaintiff retained the residual functional capacity

7

("RFC") to:

> lift and/or carry 10 pounds occasionally. He can sit/stand 15 minutes maximum at a time. He cannot climb and can occasionally balance, stoop, kneel, crouch, and crawl. He cannot work at heights or around dangerous or moving machinery. He must avoid work in cold or humid climate conditions and in environments with excessive noise.

Id. In making this determination, the ALJ found Plaintiff's assertions concerning his symptoms and limitations to be not fully credible. (Tr. 496).

At step four, the ALJ determined that based on Plaintiff's RFC, he did not have the ability to perform any of his past relevant work. (Tr. 497). Therefore, the ALJ proceeded to step five. At step five, the ALJ utilized the testimony of a vocational expert ("VE") and determined that prior to January 26, 2003, based on Plaintiff's age, educational background, work experience, and residual functional capacity, Plaintiff was "capable of making a successful adjustment to work that existed in significant numbers in the national economy." (Tr. 498). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act for the period of time prior to January 26, 2003. (Tr. 499). However, as of January 26, 2003, Plaintiff was disabled. Id.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial

8

evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff's memorandum raises two issues on appeal. First, Plaintiff claims the ALJ failed to properly assess Plaintiff's RFC. (Doc. 15, pp. 7-8). Next, Plaintiff claims the ALJ erred by failing to include all of Plaintiff's limitations in the hypothetical posed to the VE. (Doc 15, p. 9). The Court will address each of these arguments.

#### 1. Whether the ALJ properly assessed Plaintiff's RFC

Although Plaintiff's memorandum claims to be arguing that the ALJ failed to properly assess Plaintiff's RFC, the memorandum does not provide the Court with any

9

insights as to how the RFC was improperly assessed. Instead, Plaintiff raises several arguments regarding his belief that the ALJ failed to properly consider records from Plaintiff's treating physician, Dr. Nabizadeh. First, Plaintiff claims the ALJ "only highlighted [records from Dr. Nabizadeh] that discuss normal examinations and findings." (Doc. 15, p.7). Specifically, Plaintiff alleges the ALJ failed to mention Dr. Nabizadeh's responses to interrogatories dated April 13, 2000 or the addendum, both of which, Plaintiff alleges, indicate "severe medical problems" in multiple areas of the back. Plaintiff does not, however, point out how these "severe medical problems" would affect Plaintiff's RFC.

Plaintiff is correct that the ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R. §§404.1520(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Specifically, the ALJ "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ is required to consider all of the evidence, she is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected." Vincent

10

v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, Dr. Nabizadeh's responses to the Interrogatories from the VA consist of a series of questions where Dr. Nabizadeh could place check marks to indicate his responses. (Tr. 320-322). First, Dr. Nabizadeh indicated he believed Plaintiff suffered from impairments which interfered with Plaintiff's activities of daily living and work activities. (Tr. 321). Additionally, Dr. Nabizadeh opined Plaintiff's pain would interfere with Plaintiff's ability to work on a "regular, continuous, sustained" basis; Plaintiff's pain was continuous (5.3 to 8 out of 8 hours); and Plaintiff's pain was severe. Id. On the Addendum, also dated April 13, 2000, Dr. Nabizadeh rated Plaintiff's limitation of motion in his cervical, dorsal, and lumbar spine as being severe. (Tr. 322-23). Dr. Nabizadeh also rated Plaintiff as having pronounced intervertebral disc syndrome and severe lumbosacral strain. Id.

The ALJ's decision does not specifically reference these documents. However, it is clear the ALJ considered records from Dr. Nabizadeh as the ALJ discussed them at length in the opinion. Additionally, the ALJ noted that Dr. Nabizadeh's treatment records did "not support a finding of debilitating pain and other symptoms that would result in an inability to perform all gainful work activity." (Tr. 496). As Dr. Nabizadeh's opinions in the April 13, 2000 Interrogatories and Addendum must have been based on his treatment of Plaintiff and the ALJ specifically noted that Dr. Nabizadeh's treatment records did not support a finding that Plaintiff was disabled, the undersigned finds it very unlikely the ALJ did not consider the April 13, 2000 Interrogatories and Addendum. Instead, the undersigned finds the ALJ implicitly rejected the opinions contained in the April 13, 2000 Interrogatories and Addendum by stating that Dr. Nabizadeh's treatment

11

records did not support a finding that Plaintiff was disabled.  Accordingly, the undersigned finds the ALJ properly considered the April 13, 2000 Interrogatories and Addendum and did not err in failing to specifically reference them.  See Black v. Apfel, 143 F.3d 383, 385-86 (8th Cir. 1998) (holding ALJ did not err in failing to discuss a letter from a treating source expressing the opinion that the claimant was disabled on the basis that the ALJ was not required to discuss every piece of evidence, the ALJ did reference the doctor's evaluation and relied upon relevant treatment information from the doctor's notes, and as such, it was unlikely the ALJ had not considered the doctor's opinion regarding disability).

Next, Plaintiff argues the ALJ failed to discuss "other entries from Dr. Nabizadeh that discuss pain or migraine headaches or the other entries that clearly document the severe limitations with regard to the cervical, lumbar and thoracic spines." (Doc. 15, pp.7-8).  Plaintiff does not present any further discussion regarding what entries he believed the ALJ should have discussed nor does he specify the "severe limitations" regarding Plaintiff's spine.  As noted above, other than saying Plaintiff's impairments and pain were severe, the undersigned was unable to locate any records where Dr. Nabizadeh specified any limitations in Plaintiff's ability to work.  As such, it was not error for the ALJ to fail to discuss the "other entries."

Finally, Plaintiff takes issue with the ALJ's statement that the issue of headaches was "rarely mentioned" to Dr. Nabizadeh. (Doc. 15, p.8).  Plaintiff notes that "the issue of migraine headaches or simply headaches" was mentioned in Dr. Nabizadeh's records on at least twelve occasions from June 1999 to January 2003.  Id.  The Court has reviewed these records and notes that they simply state Plaintiff was being followed in

12

Dr. Nabizadeh's clinic for headaches. Only one record makes any further reference to Plaintiff's headaches. On April 24, 2002, Dr. Nabizadeh reported that a review of Plaintiff's systems was "essentially unremarkable except for the pain in the lower back and occasional headaches." (Tr. 211). No other records indicate Plaintiff made references to his headaches. Therefore, the ALJ's statement that the issue of headaches was rarely mentioned to Dr. Nabizadeh was factually correct.

Because Plaintiff has failed to show any error in the ALJ's determination of his RFC nor has he shown the ALJ failed to properly consider evidence from Dr. Nabizadeh, the Court will not order remand on these bases.

### 2. Whether the ALJ erred by failing to present the VE with a complete hypothetical

Plaintiff also argues the ALJ erred by failing to include limitations associated with his headaches and tinnitus in the hypothetical posed to the ALJ. (Doc. 15, pp. 9-10). The Plaintiff is correct that case law in this circuit requires the ALJ to employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002); Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. Pendley, 767 F.2d at 1561 (quoting Brenam v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ is not required to include in a hypothetical question, limitations that are not supported by the record or limitations the ALJ properly rejected. Bouie v. Astrue, 226 Fed.Appx. 892, 894 (11th Cir. 2007) (quoting Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1161 (11th Cir.

13

2004)). Further, the "hypothetical question posed by the ALJ may omit non-severe impairments." Loveless v. Massanari, 136 F.Supp.2d 1245, 1250-51 (M.D. Ala. 2001) (citing Pendley, 767 F.2d at 1563)).

In the instant case, the ALJ posed the following hypothetical to the VE:

> assume an individual that's limited to sedentary work in terms of lifting, in that they should not lift more than 10 pounds occasional, or less than 10 pounds frequently during the work day, that, in addition to that, they should not be in a position which requires them to climb, work at heights, or on ladders, or around dangerous or moving machinery, and they should also not be required to more than occasionally do other postural activities such as balancing, stooping, kneeling, crouching, and crawling. And I would also ask you to assume for purposes of this question, that the individual would need the opportunity to alternate between being seated and being on their feet during the work day. And I am describing that limitation in terms of a 15 minute maximum at one time in either position. In other words, they could sustain a job task for 15 minutes sitting, or they could sustain a job for 15 minutes standing. If it was less than that, great, but that would be the maximum at one time during, throughout an eight hour work day.

(Tr. 473-74). In response to the above hypothetical, the VE determined the hypothetical individual would not be able to return to Plaintiff's past relevant work, but would be able to perform other jobs such as surveillance system monitor, photograph mounter, and charge account clerk. (Tr. 474-75). The ALJ then asked the VE if any of the positions would be impacted if the hypothetical individual needed to be in a work environment where he was not exposed to extremes in temperature and humidity. (Tr. 475). The VE responded that the positions would not be impacted. Id. The ALJ then asked if the positions would be impacted by the individual having to work in an environment without excessive noise and again, the VE stated the positions would not be impacted. Id.

Plaintiff is correct that the ALJ's hypothetical does not mention any restrictions

14

resulting from Plaintiff's migraine headaches or his tinnitus. However, the ALJ did not find either the migraine headaches or the tinnitus to be severe impairments and as noted above, the hypothetical posed to the ALJ need not contain references to non-severe impairments. Loveless, 136 F.Supp.2d at 1250-51 (citing Pendley, 767 F.2d at 1563). Accordingly, to determine whether the ALJ posed a proper hypothetical, the Court must determine whether there is substantial evidence to support the ALJ's decision that Plaintiff's migraine headaches and tinnitus were not severe.

At step two of the sequential analysis, the ALJ found Plaintiff had the following severe impairments: post-traumatic scoliosis and cervical, thoracic, and lumbar spondylosis. (Tr. 493). At this step, the plaintiff has the burden of proving his impairments are severe. McDaniel v. Bowen, 800 F.2d 1026, 1030-31 (11th Cir. 1986). By definition, this inquiry is a "threshold" inquiry, and only the most trivial of impairments are to be rejected. In the Eleventh Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Id. However, the severity of a medically ascertained disability "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). "At the second step...medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28.

Here, the Court finds Plaintiff's claims regarding his migraine headaches and tinnitus to be without merit. Plaintiff has not alleged any specific limitations caused by

15

these impairments and the undersigned was unable to locate any references to limitations during its review of the medical records. On his disability report dated March 20, 2002, at Section 2, question A: "What are the illnesses, injuries or conditions that limit your ability to work," Plaintiff responded: "post-traumatic scoliosis, cervical, lumbar and thoracic spondylosis with radiculopathy. Additionally - a hearing impairment, rt ankle, neck spurs, hydroseal, difficulties sleeping." (Tr. 133). Plaintiff did not mention migraine headaches. While Plaintiff mentioned a hearing impairment, he has not provided any evidence demonstrating the ringing in his ears would affect his ability to work. Indeed, during the May 12, 2004 hearing, Plaintiff stated he took medication to stop the ringing in his ears. (Tr. 356). He stated that the medication worked "fairly well unless it's a barometric pressure day." Id. Plaintiff elaborated that on a bad day, his tinnitus was not painful, but was "distracting" and might affect his hearing efficiency. (Tr. 361).

To classify an impairment as severe, there must be evidence in the record that shows the impairment will interfere with a claimant's work activities. See McCruter, 791 F.2d at 1547-48. Without any evidence showing how the migraine headaches or tinnitus affected Plaintiff's ability to work, there is no basis for finding these impairments severe. Therefore, this Court finds the ALJ did not err in finding Plaintiff's migraine headaches and tinnitus were not severe impairments and failing to include any reference to them in the hypothetical posed to the VE.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter

16

judgment consistent with this opinion and thereafter, to close the file.


**DONE AND ORDERED** at Jacksonville, Florida, this  2nd  day of June, 2009.


_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record